WILLIAM CISSNA

*v.*

EBEN S. WALTERS *et al.*

*Filed at Ottawa November 10, 1881.*

1. EVIDENCE—*to overcome sworn answer.* A sworn answer to a bill in chancery, in which the defendant's oath is not waived, is evidence, so far as it is responsive, and must be overcome by other evidence, or it will prevail.

2. SAME—*general statements controlled by particular facts stated.* Where a party or witness makes a general statement, which, from its very nature, must consist in a large degree of mere matter of opinion, and in the same connection makes a specific statement of fact relating to the same subject which is inconsistent with the general statement, the latter must be considered as modified and controlled by the subsequent specific statement.

3. MARRIED WOMEN—*wife's money belonged to husband before the Married Woman's act.* Under the law prior to the Married Woman's act of 1861, any money coming to a married woman became that of her husband, and any promise to pay it to her by the husband in case it was expended for the family is not enforcible, either at law or in equity.

4. In 1842, a wife received $400 from her father's estate, which was expended for the benefit of the family on the promise of the husband to repay the same, which he did repay her in 1852, and the money so repaid was used in the purchase of lots by the husband in his name, which property he improved, and on the sale of the lots in 1867 for $1200, that sum was paid to her, to be used in discharging a mortgage on a tract of land bought by him in his own name, the balance of which was paid by money borrowed by him, he giving a deed of trust on the land as owner, in which his wife joined relinquishing her dower, he making the improvements thereon, and the title remaining in him all the time until a short time before the recovery of a judgment against him, when he conveyed the same to the wife. It was *held*, on creditor's bill to set aside the conveyance to the wife, that the land, not having been bought and paid for with the wife's money, was subject to the payment of the judgment against the husband.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. G. B. JOINER, for the appellant, after stating the facts, made the following points:

1. The repeated averments in the answer that the wife's money bought and improved the land in Kendall county, as also the land in question, amount to nothing, when the facts above stated in the bill and answers are admitted.

2. Prior to the act of 1861, by the marriage the property and earnings of the wife became absolutely vested in the husband, and the increase thereof was the property of the husband. 65 Ill. 470; 71 id. 307.

Then, if the Kendall county property was conveyed to the husband, and occupied by both as a residence, even if paid

for by the money he received from her, it became absolutely his property.

It remained in his name until the year 1867, when they came to Iroquois county and bought this land.   There is no proof that any money went to pay for this land, except $300, part of the proceeds of the Kendall land, the money borrowed on the land, and the rents and profits of the same, and perhaps the $200 the husband had when he came to Iroquois.

The wife is bound to prove that she paid for the land from money other than that derived from her husband.   71 Ill. 307.

Even where a wife advances money to her husband, with which he engages in trade, such capital and its fruits in the business will be subject to the husband's debts.   *Watterman* v. *Price,* 47 Ill. 22; 67 id. 164; 86 id. 74.

Mr. JAMES FLETCHER, for the appellees, after stating and commenting upon the facts, made the following points:

1.   The complainant has offered no evidence in support of his bill, or to contradict the defendants' answers, or their testimony.

2.   When the answer is sworn to, and it denies the allegations of the bill, and sets up a defence which is a complete answer, the complainant must produce evidence to sustain his bill and overthrow the defence.

3.   The courts of this State have regulated the rights of married women in a favorable light since the law of 1861. *Sweeney ex rel.* v. *Dawson et al.* 47 Ill. 450; *McLowery et al.* v. *Partlow,* 55 id. 340.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 24th of December, 1877, the appellant, William Cissna, commenced an action in the Iroquois circuit court, against Eben S. Walters, appellee, and his son, William Walters, to recover the amount of a promissory note made by

them to appellant. On the 25th of November of the following year a final judgment was entered in the action against the defendants, and in favor of the plaintiff, for $234.33. After the making of the note upon which this judgment was rendered, and but thirteen days before the commencement of the suit, Eben S. Walters conveyed to Mary Walters, his wife, certain real estate in Iroquois county, which had previously, from the spring of 1867 up to that time, appeared upon the records of deeds for that county as the individual property of the said Eben, during which time, as also appears from the records, the said Eben had, on different occasions, executed mortgages and deeds of trust upon the premises in question to secure his individual loans and indebtedness, in all of which his wife had joined as a party, for the purpose of relinquishing her dower therein. It further appears that the premises in question are the only real estate which, at the time of the conveyance to his wife, stood upon the register of deeds in his own name. An execution having been issued on the above judgment, and returned *nulla bona*, appellant, on the 19th of August, 1879, filed in the Iroquois circuit court the present bill against appellees, for the purpose of subjecting the premises in question to the payment of the above judgment, on the alleged ground that said conveyance was without any valid consideration, and fraudulent and void as against appellant.

Appellees resist the case made by the bill, principally upon the alleged ground the premises in question were originally purchased for the said Mary Walters, and that the purchase money, so far as the same had been paid, was furnished by her out of her own separate estate, and that the making of the deed to the husband instead of the wife, as was intended, was the result partly of inadvertence or misapprehension on the part of the grantor, and in violation of the husband's express instructions.

There was a hearing upon the merits in the circuit court, resulting in a decree dismissing appellant's bill, and he has brought the record here for review.

The bill in question is a creditor's bill, and most of the facts essential to sustain it are not controverted. The vital question in this case, and upon which its determination chiefly depends, is whether the consideration paid for the land in controversy, so far as it has been paid at all, was in contemplation of law furnished by the husband or the wife. If by the latter, the decree of the circuit court was proper, and should be affirmed; if by the former, it was improper, and should be reversed. The bill did not waive the oaths of the defendants, and they having answered under oath, the answer must be accepted as true, for it is not claimed that there is any evidence, outside of the answer, sufficient to overcome its statements of facts, so far as they are responsive to the material charges in the bill. In short, if the bill can be maintained at all, it must be done by the evidence which the appellees and their own witnesses have furnished. As already remarked, most of the material facts charged in the bill are admitted by the answer. That the husband was indebted to appellant at the time of the conveyance by him to the wife; that the judgment for such indebtedness was subsequently obtained against the husband; that an execution was sued out on such judgment and returned *nulla bona;* and that the husband, during the existence of such indebtedness, conveyed the property in question to the wife, are facts fully established by appellees' answer, and it only remains to be seen whether the new matter set up by way of avoidance of the case thus admitted on behalf of appellant is in law sufficient to defeat it,—or, in other words, have the appellees, by their own showing, established the hypothesis that the money paid on account of the purchase of the land was in contemplation of law the money of the wife?

We think not. It is true that the answer states, in general terms, that the purchase money did belong to the wife, and this statement is repeated in their testimony as witnesses, and if nothing further appeared in their answer or testimony we would have no hesitancy in saying that a sufficient defence was shown to the bill. But such is not the case. Appellees, both in their answer and in their testimony, in attempting to show how the wife acquired this purchase money, clearly show that it belonged to the husband, and not the wife. Where, as in the present case, a party or witness makes a general statement, which, from its very nature, must consist in a large degree of mere matter of opinion, and in the same connection makes certain specific statements of fact relating to the same subject which are inconsistent with the previous general statement, such general statement must be regarded as modified and controlled by the subsequent specific statements.

Whether the moneys paid for the land in controversy belonged to the wife under the specific state of facts testified to by appellees, presents a pure question of law, about which equally intelligent and honest witnesses might arrive at directly opposite conclusions; hence it would be exceedingly dangerous to accept as absolutely true the opinion of a non-professional witness upon such a question, however honest and intelligent he might be.

The specific facts relied upon to show the purchase money belonged to the wife, as appears from the answer and the testimony of appellees, are in substance as follows: The parties were married and commenced housekeeping in the State of New York in 1842. At the time of their marriage, or in a short time after, the wife received from the estate of her father about $400, which, by agreement between them, was to be expended by her, so far as was necessary, in fitting them up for housekeeping, and giving them a start in their married life. In consideration of these outlays to be made

by her, the husband promised to reimburse her whenever he should be able to do so, with interest. In 1852 the parties moved to this State, and settled in Kendall county. Before coming here the husband received from his father's estate $1000, out of which he refunded to her, with interest, the $400 advanced by her for the purposes above stated, which amounted altogether to $700. This money, according to the testimony of the husband, which is not controverted, was expended in 1855 in the purchase of village lots in Millington, Kendall county, this State, upon which he in the following year procured lumber and built a house, the work being done by himself. The family resided upon these lots from 1856 to the time of their removal to Iroquois county, in 1867, when they were sold for some $1200. The title to these lots was originally taken and remained in the name of the husband alone, till the time of their sale, as just stated. This $1200 was paid into her hands by the husband, to be used in discharging the mortgage given by him on the land in controversy to secure the unpaid purchase money, and $500 of this sum was paid at the time of the sale, and the balance some time afterwards.

Speaking of the land in controversy, and how it was paid for and improved, the husband says: "My impression is, that of the $500 received for the place up there (meaning the house and lot in Kendall county), she expended $300 on the place, and gave me $200 to come down here with and do the work, and William gave the money to my credit."

The answer states "that when the deed arrived, Mary paid to said Wells (the party from whom the land in controversy was purchased), out of her own money, *which she had obtained from the sale of her house and lots in Kendall county,* about $325, but the exact sum they have forgotten."

With reference to any subsequent payments the evidence is vague and unsatisfactory, but it substantially appears that whatever were made, were in the main, if not altogether,

made with borrowed money, to secure which there is now an outstanding deed of trust on the land in controversy, executed in the name of the husband as owner, in which the wife joins for the purpose of relinquishing her dower, as in other conveyances heretofore mentioned, which indebtedness is evidenced by a note signed by the husband and wife. The house upon this land was built by the husband, and he and his family have been residing on it ever since, during all which time the title stood in his own name, until a few days before the commencement of the suit by appellant against him and his son, as heretofore stated, and the only substantial payment which appears to have ever been made on the land, outside of those made with borrowed money, was made out of the proceeds of the Kendall county lots, which were paid for, as we have already seen, by money which the wife received directly from the husband, and which, under the law as it then stood, clearly belonged to the husband. So of the $400 which the wife received from her father's estate in 1842. By virtue of the marriage, the moment she received it it became the money of the husband, and hence any promise on his part, after the marriage, to repay it to her, in the event it was spent for the benefit of the family, was such a promise as was not enforcible, either at law or in equity.

Much of the evidence in support of the defence to this bill is exceedingly loose, vague and uncertain, and when considered as a whole, in the light of the conceded facts, is very unsatisfactory. The statements in the answer are often general and sweeping in their character, and wholly inconsistent with admitted facts. Upon the whole, we are of opinion the appellees failed to show the land in question belongs in equity to the wife, and the presumption is that it belongs to the husband.

The decree of the circuit court is reversed, and the cause remanded for further proceedings in conformity with this opinion.                              *Decree reversed.*